[No. 1861]

GOLDFIELD MOHAWK MINING COMPANY (A COR-
PORATION), RESPONDENT, *v.* FRANCES–MOHAWK
MINING AND LEASING COMPANY (A CORPORA-
TION), APPELLANT.

1. NEW TRIAL—INSUFFICIENCY OF EVIDENCE—DUTY OF TRIAL JUDGE.
Under the statute making insufficiency of the evidence to
justify the verdict ground for a new trial, the refusal of the
trial judge to pass on such ground in support of a motion for
new trial is error.

2. APPEAL AND ERROR—DISPOSITION ON APPEAL.
Under Comp. Laws, 2513, empowering the supreme court to
review on appeal an order granting or refusing a new trial, and
section 2515 providing that such court may reverse, affirm, or
modify the judgment or order appealed from, and may, if
necessary, order a new trial, etc., the court on reversing an
order denying a new trial demanded for insufficiency of evi-
dence to support the verdict may remand the case, with direc-
tions to the trial court to consider and pass on such ground
anew.

APPEAL from the District Court of the Seventh Judi-
cial District of the State of Nevada, Esmeralda County;
*Theron Stevens,* Judge.

Action by the Goldfield Mohawk Mining Company, a cor-
poration, against the Frances-Mohawk Mining and Leas-
ing Company, a corporation. Judgment for plaintiff, and
from an order overruling a motion for a new trial, defend-
ant appeals. **Order set aside and case remanded**, with
instructions.

The facts sufficiently appear in the opinion.

*Powers & Marioneaux* and *Frank J. Hangs* (*Thompson,
Morehouse & Thompson,* of counsel), for Appellant.

*W. H. Bryant* and *Chester L. Lyman,* for Respondent.

By the Court, SWEENEY, J.:

This action was commenced in the District Court of
Nye County, Nevada, on the 15th day of January, 1907,
for the purpose of recovering two hundred thousand dol-
lars ($200,000) alleged damages for the violation of the
terms of a written lease executed by the respondent,

Goldfield Mohawk Mining Company, to the appellant.    A
motion for a change of venue was interposed and granted,
removing the cause to Esmeralda County, Nevada, because
the plaintiff and defendant were doing business in that
county, and the alleged cause of action arose therein.

It appears from the testimony that the Mohawk No. 2
and Slim Jim Fraction mining claims, located near the
town of Goldfield, Nevada, were for some time prior to
the 1st day of September, 1905, owned by the Goldfield
Mohawk Mining Company.    Upon said date a tract of
said claims of some seven hundred (700) feet in length
and three hundred and seventy-seven (377) feet in width
was leased to one G. H. Hayes, for a period of sixteen
(16) months, expiring at noon on the 1st day of January,
1907.    Afterwards one M. J. Monnette became a partner
with Mr. Hayes, and thereafter certain other partners
were taken in.    The lease being for a considerable tract
of land, the ground was cut up into several smaller areas,
and among others a part of the ground two hundred (200)
feet long and three hundred and seventy-three (373) feet
in width was assigned to D. McKenzie & Co., and after-
wards by D. McKenzie & Co. assigned to the appellant,
Frances-Mohawk Mining and Leasing Company, on or
about the 10th day of May, 1906.

The entire tract proved to be very valuable; that por-
tion known as the Hayes and Monette lease yielding some
six or seven million dollars in about four or five months.
The small block of the claim leased to the Frances-
Mohawk Mining and Leasing Company also became very
valuable; it appearing in the testimony in this case that
something over $2,000,000 was taken out.    The lease
originally expired on the 1st day of January, 1907, but on
account of shut-downs caused by various labor troubles,
it was extended to the 8th day of January, expiring at
noon upon that day.    Although the action was originally
commenced on the 15th day of January, 1907, the case
was not called until March 22, 1909, when, after a trial
by jury lasting until the 10th day of April, 1909, a verdict
in the sum of seventy-five thousand dollars ($75,000) and

costs was rendered in favor of the respondent. A motion for a new trial was regularly argued and submitted to the court and denied, from which order overruling the motion for a new trial the defendant appeals.

It is claimed by the respondent that in operating the lease above mentioned, the appellant failed to comply with its terms in that he did not timber said property properly, nor did it remove or cause to be removed therefrom the loose rock and rubbish, as provided in said lease. That as a result of this violation of these terms of the lease, the respondent suffered damages in the sum of two hundred thousand dollars ($200,000). The appellant, on its part, claimed that. it did comply with the terms and conditions of the lease; that said ground was timbered in miner-like fashion and in accordance with the custom of the district, and that the loose rock and rubbish were removed from the workings of said ground, as provided for in the said lease. That the respondent was not damaged at all as a result of any failure on the part of the appellant to carry out the terms of the said lease. The appellant claimed as a further defense that the respondent, being fully aware of all the conditions of the said lease, did, on or about the 1st day of January, 1907, approve of the work done and the condition of the property, and that it was thereby estopped from afterwards claiming any damages on account of any alleged violation of the terms of said lease. This in brief states the substance of the controversy between the parties hereto. Each side had its own theory of the case, and upon what the measure of damage, if any, should be based.

The defendant moved for a new trial in the lower court, and in support of its motion therefor, among many assigned, alleged errors, interposed one of our statutory grounds for a new trial, to wit: "Insufficiency of the evidence to justify the verdict." The court, in refusing to pass upon this ground for a new trial interposed by the appellant herein, among other things said: "I am not surprised that the defendant was dissatisfied with the ver-

dict.    A verdict of this kind could hardly result otherwise
than as a surprise, and defendant naturally feels that
justice has been outraged.    I have had quite a long
experience on the bench, during which time I have seen
many verdicts rendered that I regarded as an outrage
upon justice.    I have seen many verdicts that 'I felt
ought to be set aside in the interests of justice and fair-
ness.    *    *    *    It is the duty of the judge to preside at
the trial; to see that a fair and impartial trial is had;
that all evidence, material and proper, should be sub-
mitted to the jury.    The judge should properly instruct
them upon the law.    When that was done, I always felt
that the judge's duty in relation to that matter was
ended.    *    *    *    I could never bring my mind to see
that it was a just and proper exercise of judicial discre-
tion for the trial court to set aside the verdict of a jury,
for the reason that, in the mind of the judge, the evidence
did not justify the result.    If I could have seen it that
way, there have been many verdicts in my experience
that I should not have hesitated to set aside, because I
have felt outraged myself and felt that justice had been
outraged by such verdict.    For the reason that I believe
it would be contrary to the spirit and letter of the jury
system for a court to say that the jury had not properly
weighed the evidence, I have not done so.    *    *    *    With
that view of the law, for the court to say that, while it
was the sole judge of the facts, if the jury did not decide
the matter in accordance with the views of the court, the
verdict should be set aside, would be exercising a discre-
tion dangerous to the jury system.    For that reason, I
have never yet set aside a verdict of a jury on account of
there being a question as to the preponderance of the
evidence."

One of the main errors assigned in this court by the
appellant, is, whether or not the refusal of the trial court
to pass upon this particular ground in support of its
motion for a new trial is not such a deprivation of a sub-
stantial right of appellant as to amount to error.

In our opinion the trial judge misconceived his judicial

duty in failing and refusing to pass upon this vital ground of error assigned by appellant, at that particular stage of the proceeding, and laboring under his misconception of the law, by his refusal and failure so to consider this alleged error, deprived appellant of a substantial right to which it was entitled. The learned trial judge, during the progress of the trial, rightfully refused to express his opinion on the facts of the case to the jury, and in confining his instructions to the law of the case, leaving the jury to express its verdict as to the facts; but, on the motion for a new trial, the situation was changed, and, under our statutes which provide as a ground for a new trial "insufficiency of the evidence to support the verdict," it became his judicial duty to pass upon the evidence and to determine whether or not the evidence was sufficient to sustain the verdict.

It makes no difference in law what personal opinion the trial court may entertain as to the propriety of setting aside a verdict of a jury, or the merits or faults of our jury system. The legislature has provided what grounds may be interposed in support of a motion for a new trial, and among them is the ground that the "evidence is insufficient to sustain the verdict," and it thereby becomes the plain judicial duty of every trial judge, irrespective of his personal views, when said ground is interposed, to review and pass upon the evidence to the end that he may properly rule on the motion.

Every litigant is entitled, on motion for a new trial, where this statutory ground for a new trial is properly interposed, to have the benefit of the judgment of the trial court, before his property or rights can be taken away from him, as to whether or not such a fair and impartial trial has been had as is contemplated by our constitution and statutes, and whether or not the evidence is sufficient to justify the verdict; and it becomes, without question, the duty of the trial judge, who has heard the evidence and seen the witnesses on the stand during the trial, on motion for a new trial, to either grant or refuse a new trial, after a due consideration of the said

ground assigned for a new trial. It is made his duty under the law, upon motion for a new trial, where this ground is assigned, to review the evidence, and if he is clearly satisfied in his judgment that the evidence is insufficient to sustain the verdict to set it aside, and if sufficient to refuse to disturb it, and in the discharge of his official duty under his oath of office he is required to so act.

The Supreme Court of Tennessee, speaking through Mr. Justice Lurton, now a justice of the United States Supreme Court, in the case of *Tennessee C. & R. R. Co.* v. *Roddy*, 85 Tenn. 490, 5 S. W. 286, said: "If he [the judge] was not satisfied that under the facts and law the plaintiff should have a verdict, it was his plain duty to set it aside and grant a new trial. The doctrine is well settled in this court that if the circuit judge is of the opinion that a verdict is against the weight of the evidence, or is contrary to the law as charged by himself, he should grant a new trial. * * * Much of the importance and weight attached to jury trials proceeds from the presumption that an intelligent and learned circuit judge, accustomed to weighing evidence, has scrutinized the proof, looked into the faces of the witnesses and indorsed the action of the jury. The integrity and value of jury trials will largely disappear if the circuit judges shall endeavor to avoid the duty imposed upon them by law in this regard. If he is dissatisfied with the verdict he ought to set it aside; and this court has held that where this dissatisfaction appears in the record this court will do what he ought to have done—grant a new trial." (*England* v. *Burt*, 4 Humph. 399; *Jones* v. *Jennings*, 10 Humph. 428; *Nailing* v. *Nailing*, 2 Sneed, 631; *Vaulx* v. *Herman*, 8 Lea, 687.)

In the case of *Nashville, C. & St. L. R. Co.* v. *Neely*, 102 Tenn. 700, 53 S. W. 167, where the court misconceived his judicial duty as to invading the province of a jury in setting aside its verdict, because of an opinion of his own that such action was not within the province of a judge, it was said: "The court then overruled the motion for a

new trial, stating that the facts in the case were considerably mixed, but that it was a rule of his rarely to invade the province of the jury in setting aside their verdict if there were any substantial facts to support the same.   The concluding part of this recital discloses erroneous action on the part of the court.   It shows a misconception of the respective functions of the court and jury in regard to the evidence and gives unwarranted weight to the verdict.   It is incumbent on the trial judge, in passing upon the motion for a new trial, to weigh the evidence for himself and decide whether or not the verdict, when reduced to $2,000, was warranted thereby, and it would not have been an invasion 'of the province of the jury' for him to do so.   It was his province to decide that question.   The case had passed from the jury and had reached that stage in which the judge must approve or disapprove the verdict; and 'in discharging that exclusive and independent duty, he must unavoidably determine for himself, after giving all due weight to the verdict of the jury, whether or not the evidence introduced was sufficient to sustain that verdict.'   His honor seems to have gone far enough in his consideration of the evidence to conclude that there were some 'substantial facts to support' the verdict, and, deeming that sufficient, he considered the evidence no further.   That was a misapplication of a familiar rule of long standing in the practice of this court, but wholly inapplicable in *nisi prius* courts.   Indeed, that rule, as here applied, is based upon the fact that both the trial judge and the jury have carefully weighed the evidence, and that while doing so they have had more favorable opportunity of ascertaining the truth than this court can have." (*Railroad Company* v. *Brown*, 96 Tenn. 559, 35 S. W. 560; *Illinois Cent. R. Co.* v. *Brown*, 96 Tenn. 559, 35 S. W. 560; *Tate* v. *Gray*, 4 Sneed, 592; *England* v. *Burt*, 4 Humph. 400; *Nailing* v. *Nailing*, 2 Sneed, 631; *Vaulx* v. *Herman*, 8 Lea, 683; *Turner* v. *Turner*, 85 Tenn. 389, 3 S. W. 121; *R. R. Co.* v. *Roddy*, 85 Tenn. 403, 5 S. W. 286; *Railroad Company* v. *Lee*, 95 Tenn. 389, 32 S. W. 249.)

In the case of *Illinois Cent. R. Co.* v. *Brown*, 96 Tenn. 559, 562, 35 S. W. 560, 561, the court said: "So I carefully refrained from expressing to the jury any opinion as to whether or not these facts did or did not make out a case of wilful neglect; and I do not intend to express any opinion on the subject now, but will leave it to the supreme court." And he refused to disturb the verdict, and the court says: "In discharging that exclusive and indispensable duty, he must unavoidably determine for himself, after giving all due weight to the verdict of the jury, whether or not the evidence introduced was sufficient to sustain that verdict. That was one of the questions presented in the motion for a new trial, and he had no power to pretermit it 'and leave it' to this court for decision. And having been pretermitted by him this court is without jurisdiction to decide it. To use apposite language of a very recent case, it was his duty either to approve or disapprove the verdict, and then, in due course of proceeding, let the aggrieved party bring the case into this court, if desired. It was his province and his right to decide, in the first instance, whether or not judgment should be pronounced upon the verdict rendered by the jury. This court cannot decide the question originally. It has no original jurisdiction. It cannot pass upon the evidence in a case before the verdict of the jury has received approval or disapproval; it does not indicate whether the trial judge though the verdict was right or wrong, on the evidence." (*Railway Company* v. *Lee*, 95 Tenn. 389, 32 S. W. 249.)

The Supreme Court of Kansas, in the case of *Cherokee and P. Coal and Mining Company* v. *Stoop*, 56 Kan. 426, 43 Pac. 766, said: "A trial court will be reluctant to set aside a verdict, where a doubtful question of fact exists, simply because its judgment inclines the other way; but the mere fact that it was a conflict in testimony does not relieve the court from examining the sufficiency of the evidence, nor make the verdict of the jury conclusive. While the case is before the jury for their consideration the jury are the exclusive judges of all questions of fact;

but when the matter comes up before the court upon a motion for a new trial, it then becomes the duty of the trial court to determine whether the verdict is erroneous. * * * It has been the unvarying decision of this court, to permit no verdict to stand unless both the jury and the court trying the case together, within the rules prescribed, approve the same. Whenever a trial court determines that the verdict is clearly against the weight or preponderance of the evidence, it should not hestitate to set it aside and grant a new trial; and in arriving at this determination the judge of the trial court must be controlled by his own judgment and not by that of the jury." (*Railroad Company* v. *Ryan,* 49 Kan. 1, 30 Pac. 108; *Williams* v. *Townsend,* 15 Kan. 563; *Railway* v. *Diehl,* 33 Kan. 422, 6 Pac. 566; *Railway Company* v. *Kunkel,* 17 Kan. 172.)

The Supreme Court of California, in the case of *People* v. *Knutte,* 111 Cal. 453, 44 Pac. 166, said: "An equal opportunity with the jury to observe the manner of the witnesses, the character of their testimony, and to judge their credibility, and to discover their motives. He, too, ought to be satisfed that the evidence as a whole was sufficient to sustain the verdict. If he was not, it was not only the proper exercise of a legal discretion, but his duty to grant a new trial." (*People* v. *Baker,* 39 Cal. 686; *People* v. *Ashnauer,* 47 Cal. 98; *People* v. *Hotz,* 73 Cal. 241, 14 Pac. 856.)

In the case of *People* v. *Chew Wing Gow,* 120 Cal. 298, 52 Pac. 657, the Supreme Court of California said: "It is made his [the trial judge's] duty to grant a new trial, if in his opinion the verdict is against the evidence. This is one of the most important duties which the trial judge has to perform, and, since no efficient review of his action can be had, it is peculiarly incumbent upon the judge to weigh the evidence with care, and conscientiously grant a new trial when in his opinion the interests of justice require it."

In the case of *Kramm* v. *Stockton Electric R. Co.,* 10 Cal. App. 271, 101 Pac. 914, the court, quoting from the case

of *Green* v. *Soule,* 145 Cal. 102, 78 Pac. 337, said: "There is a clear and obvious distinction between the duty of a trial court and the duty of an appellate court with respect to the decision of such questions. The trial court cannot rest upon a conflict in the evidence, but must weigh and consider the evidence for both parties, and determine for itself the just conclusion to be drawn from it. If the judge is not satisfied with the verdict, and is convinced that it is clearly against the weight of the evidence, it is his duty to set it aside, even though there may have been some conflict in the testimony. * * * But in considering the question upon the motion he must act upon his own judgment as to the effect of the evidence. The parties are entitled to the judgment of the jury in reaching a verdict, in the first instance; but upon a motion for a new trial they are equally entitled to the independent judgment of the judge as to whether such verdict is supported by the evidence. It is clear therefore that, when the trial judge is satisfied that a verdict is wrong, and opposed to the evidence, if he refuses to set it aside he violates his oath of office. The judge of the trial court does not sit as a mere moderator to record the will of the jury. He has other duties and functions to perform which he cannot lawfully escape or evade. He must confine the evidence within the issues, and when a verdict is returned unwarranted by the evidence he must set it aside and grant a new trial when asked for. The judge before whom the case is tried in the first instance has the same opportunity as the jury to form an opinion with respect to the weight to be given to each witness; and one of the highest and most important functions of his office is the power to set aside a verdict whenever in the exercise of a sound discretion he considers that the jury, from any cause whatever, has returned an improper or unjust verdict." (*Woods* v. *Richmond R. R. Co.,* 1 App. D. C. 169.)

In the case of *People* v. *Knutte,* 111 Cal. 453, 44 Pac. 166, the court said: "While it is the exclusive province of the jury to find the facts, it is nevertheless one of the most

important requirements of the trial judge to see to it that this function of the jury is intelligently and justly exercised in this respect. While he cannot competently interfere with or control the jury in passing upon the evidence, he nevertheless exercises a very salutary, supervisory power over their verdict. In the exercise of that power he should always satisfy himself that the evidence as a whole is sufficient to sustain the verdict; and if, in his sound judgment, it does not, he should unhesitatingly say so and set the verdict aside."

In the case of *Atchison, T. & S. F. R. Co.* v. *Consolidated Cattle Co.*, 59 Kan. 111, 113, 52 Pac. 71, 72, the trial court refused to hear argument of defendant upon the motion for a new trial. The supreme court says: "The parties to a cause pending in a court have an absolute right to be heard, not only at the trial of the issue of fact, but also on motions addressed to the court involving the merits of the controversy. While this exact question has perhaps never been presented to this court, the principle is declared in many cases. No court is ever warranted in assuming that it fully understands the merits of the cause until it has heard the parties to it. It is always permissible to limit arguments of counsel to such a reasonable time as may be necessary for the presentation of the matter under consideration.  *  *  *  It was incumbent on the trial court to review the whole case, and to pass his judgment on the justice of the verdict.  *  *  *  On motion for a new trial the attention of the court is for the first time challenged to the question of fact in the case. It is, at the same time, challenged to all matters involved in its final determination. We cannot give any sanction to the denial to a party of all opportunity to be heard on a matter of such importance. And the court, after further considering the matter, ordered a new trial." (*Douglass* v. *Hill*, 29 Kan. 527; *State* v. *Bridges*, 29 Kan. 138; *Railroad Company* v. *Ryan*, 49 Kan. 1, 30 Pac. 108; *Larabee* v. *Hall*, 50 Kan. 311, 31 Pac. 1062.)

Justice Brewer, while a justice of the Supreme Court

of Kansas, and who afterwards became one of the most able of our United States Supreme Court Justices, very clearly laid down the rule upon the point under consideration, in the case of *Railroad Company* v. *Kunkel,* 17 Kan. 172, as follows: "The one [the trial judge] has the same opportunity as the jury for forming a just estimate of the credence to be placed in the various witnesses, and if it appears to him that the jury have found against the weight of the evidence, it is his imperative duty to set the verdict aside. We do not mean that he is to substitute his own judgment in all cases for the judgment of the jury, for it is their province to settle questions of fact; and when the evidence is nearly balanced or is such that different minds would naturally and fairly come to different conclusions thereon, he has no right to disturb the findings of the jury, although his own judgment might incline him the other way. In other words, the finding of the jury is to be upheld by him as against any mere doubts of its correctness. But when his judgment tells him that it is wrong, that, whether from mistake, or prejudice, or other cause, the jury have erred, and found against the fair preponderance of the evidence, then no duty is more imperative than that of setting aside the verdict, and remanding the question to another jury." (*Larsen* v. *Navigation Co.,* 19 Or. 240, 23 Pac. 974; *State v. Billings,* 81 Iowa, 99, 46 N. W. 862; *City of Tacoma* v. *Tacoma Light and Water Co.,* 16 Wash. 288, 47 Pac. 738; *Hawkins* v. *Reichert,* 28 Cal. 534; *Dickey* v. *Davis,* 39 Cal. 565; *Bennett* v. *Hobro,* 72 Cal. 178, 13 Pac. 473; *Reid* v. *Young,* 7 App. Div. 400, 39 N. Y. Supp. 899; *Bank* v. *Wood,* 124 Mo. 72, 27 S. W. 554; *Colvin* v. *Northern Pac. Ry. Co.,* 42 Wash. 5, 84 Pac. 616; *Ruppel* v. *United Railroads of S. F.,* 1 Cal. App. 666, 82 Pac. 1073; *Shulze* v. *Shea,* 37 Colo. 337, 86 Pac. 117; *Crowley* v. *Shepard,* 38 Colo. 345, 88 Pac. 177; *Wendling Lumber Co.* v. *Glenwood Lumber Co.,* 153 Cal. 411, 95 Pac. 1029; *Gilbreath* v. *Gilbreath,* 42 Colo. 5, 94 Pac. 23; *Houghton* v. *Loma Prieta Lumber Co.,* 152 Cal. 574, 93 Pac. 377; *Condee* v. *Gyger et al.,*

126 Cal. 546, 59 Pac. 26; *Bjorman* v. *Fort Bragg Redwood Co.,* 92 Cal. 500, 28 Pac. 591; *Rhode* v. *Steinmetz,* 25 Colo. 308, 55 Pac. 814; *Mitchell* v. *Reed et al.,* 16 Colo. 109, 26 Pac. 342; *Kramm* v. *Stockton Electric Co.,* 10 Cal. App. 271, 101 Pac. 914; *Weisser* v. *Southern Pac. Co.,* 148 Cal. 426, 83 Pac. 439; *Harrington* v. *Butte & B. Min. Co.,* 27 Mont. 1, 69 Pac. 102; *Patten* v. *Hyde,* 23 Mont. 23, 57 Pac. 407; *In re Carriger's Estate,* 104 Cal. 81, 37 Pac. 785; *Warner* v. *F. Thomas P. D. & C. Works,* 105 Cal. 409, 38 Pac. 960; *A. T. & S. F. R. Co.* v. *Consolidated Cattle Co.,* 59 Kan. 111, 52 Pac. 71; *People* v. *Chew Wing Gow,* 120 Cal. 298, 52 Pac. 657; *Sullivan et al.* v. *Board of Commissioners,* 5 Kan. App. 880, 47 Pac. 165; *Clifford* v. *Railroad Co.,* 12 Colo. 125, 20 Pac. 335; *Garwood* v. *Corbett,* 38 Mont. 364, 99 Pac. 958; *Angus* v. *Wamba,* 50 Wash. 353, 97 Pac. 246; *Sherman* v. *Mitchell,* 46 Cal. 576; *State* v. *Billings,* 81 Iowa, 99, 46 N. W. 862; *Turner* v. *Turner,* 85 Tenn. 387, 3 S. W. 121; *Serles* v. *Serles,* 35 Or. 289, 57 Pac. 634; *Nashville, C. & St. L. R. Co.* v. *Neely,* 102 Tenn. 700, 52 S. W. 167.)

In the light of these authorities, and others which could be added did we deem it necessary, it is evident that the trial judge in the present case, misconceiving his judicial duty, fell into grave error in failing and refusing to pass upon this ground assigned by the defendant for a new trial.

Believing as we do that error was committed by the trial court, in failing and refusing to pass upon the ground assigned as error, we come now to a consideration of the motion of respondent in this case, who, during the argument in this court asked permission of the court, in the event we found the trial court to have committed error by reason of the error above committed, that they be permitted to file a motion to remand the case for further action by the trial court upon this point without trying the case anew, which privilege was accorded them, subject to the objection of the appellant. Accordingly a motion was regularly filed by Bryant and Lyman, attorneys for the respondent herein, the essence of which is

as follows: "That the order denying the motion for a new trial be set aside, and the case be remanded to the court below, with instructions to hear and determine the motion for a new trial anew and decide the same upon its merits as the court may be advised in the premises."

The procedure thus invoked is a novel procedure, which this court for the first time is called upon to consider, and while it has been the custom of this court, where it found error to have been committed, in most cases to remand the same for new trials, yet, upon a consideration of the whole situation in this case, we believe that justice demands, and it is the better procedure to adopt and follow in the present case, to so set aside and modify the judgment as to grant the motion of respondent. While it is true that this procedure has never been adopted in this court, yet such authority is conferred on us by the constitution and statutes (Comp. Laws, 2513, 2515), and has been adopted in many courts and by authorities which relieve us of all doubt as to the legal right and propriety of setting aside the order and sending the case back for a ruling upon this point.

In *Felton* v. *Spiro*, 78 Fed. 576, 24 C. C. A. 321, in an able opinion rendered by William H. Taft, at that time a justice of the Circuit Court of Appeals for the United States, Sixth Circuit, and at the present time President of the United States, and which opinion was concurred in by Justice Lurton, now of the Supreme Court of the United States, in passing upon a point practically the same as the one involved in the present case, said: "The defendant receiver, therefore, is entitled to have the court below weigh all the evidence, and exercise its discretion to say whether or not, in its opinion, the verdict was so opposed to the weight of the evidence that a new trial should be granted, and the judgment of the circuit court must be reversed for this purpose. This reversal does not set aside the verdict. It only remands the cause for further proceedings from the point where the error was committed. We found no error in the action of the court upon the trial and before verdict, and hence we shall not

disturb it, but shall leave it to the trial court, upon consideration of the weight of the evidence, to grant the motion for a new trial, or not, as in its discretion it may deem proper.    That the supreme court would have taken a similar course in the case of *Mattox* v. *U. S.*, 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917, already cited, had it not been that there were also errors on the trial requiring a new trial, may be seen from the language of the chief justice in delivering the opinion of the court, where, in summing up the result of the action of the court in refusing to consider affidavits on motion for a new trial, he says (page 151, 146 U. S. and page 53, 13 Sup. Ct.; 36 L. Ed. 917): 'We should, therefore, be compelled to reverse the judgment because the affidavits were not received and considered by the court; but another ground exists upon which we must not only do this, but direct a new trial to be granted.'    See, also, Elliott, App. Proc. 580. The judgment of the circuit court is reversed, with instructions to the court below to consider and pass upon the motion for new trial in so far as it is based on the ground that the verdict was against the weight of the evidence.    The costs of the writ of error will be taxed to the defendant in error.    The costs of the circuit court will abide the event."

The Supreme Court of Oregon, in the case of *Serles* v. *Serles*, 35 Or. 289, 57 Pac. 634, said: "The defendants were entitled to have their motion for a new trial passed upon in pursuance of correct principles of law, and, the trial court having failed in this, the cause will be remanded, with directions to determine the motion under the rules herein announced.   The cumulative character of the newly discovered evidence renders defendants' position upon the first ground untenable; and, as it pertains to the second, viz, that the damages assessed are excessive, that was a matter within the discretion of the trial court.    By anything we have said in this opinion it is not intended to indicate in any manner our impressions touching the weight of the evidence submitted to the jury, and the court below, having seen the witnesses and observed their

manner, must act entirely upon its own judgment in pass-
ing upon the motion."

In an opinion delivered by Justice Field, while a justice
of the Supreme Court of the United States, in *Re Bonner*,
151 U. S. 242, 14 Sup. Ct. 323, 38 L. Ed. 149, although a
criminal case, the procedure we believe should be adopted
in the present case was sustained substantially by that
high tribunal, speaking through him, wherein it was
said: "Much complaint is made that persons are often
discharged from arrest and imprisonment when their
conviction, upon which such imprisonment was ordered,
is perfectly correct; the excess of jurisdiction on the
part of the court being in enlarging the punishment or
in enforcing it in a different mode or place than that pro-
vided by law.   But in such case there need not be any
failure of justice, for where the conviction is correct and
the error or excess of jurisdiction has been as stated,
there does not seem to be any good reason why jurisdic-
tion of the prisoner should not be reassumed by the court
that imposed the sentence in order that its defect may be
corrected.   The judges of all courts of record are magis-
trates and their object should be not to turn loose upon
society persons who have been justly convicted of crimi-
nal offenses, but, where the punishment imposed in the
mode, extent, or place of its execution, has exceeded the
law, to have it corrected by calling the attention of the
court to such excess.   We do not perceive any departure
from principle or any denial of the petitioner's right in
adopting such a course.   He complains of the unlawful-
ness of his place of imprisonment.   He is only entitled
to relief from that unlawful feature, and that he would
obtain if opportunity be given to that court for correction
in that particular.   It is true that where there are also
errors on the trial of the case affecting the judgment, not
trenching upon its jurisdiction, the mere remanding the
prisoner to the original court that imposed the sentence,
to correct the judgment in those particulars for which
the writ is issued, would not answer, for his relief
would only come upon a new trial; and his remedy for

such errors must be sought by appeal or writ of error. But in a vast majority of cases the extent and mode and place of punishment may be corrected by the original court without a new trial, and the party punished as he should be, whilst relieved from any excess committed by the court of which he complains. In such case the original court would only set aside what it had no authority to do and substitute directions required by the law to be done upon the conviction of the offender."

The Supreme Court of North Carolina, in the case of *Marsh* v. *Griffin,* 123 N. C. 660, 31 S. E. 840, said: "In the case at bar there is no suggestion of any intentional abuse on the part of his honor, but it clearly appears that, in addition to his failure to find certain facts, he was inadvertent to other material facts. How this inadvertence arose does not appear from the record, but it has been suggested that certain papers were not before him. Whatever its cause, its existence is apparent. He states in his findings of fact that the action is an 'ejectment suit,' and bases his decision partially upon the fact that the defendant gave no bond. As the pleadings show none of the requisites of an action in ejectment, the defendant was not required to give bond, and therefore the action of his honor was clearly based upon a misapprehension of fact and law. The case must be remanded, as was done in *Warren* v. *Harvey, supra* (92 N. C. 137), in order that the application may be reheard and determined in the legal discretion of the court." (*Sommer* v. *Sommer,* 87 App. Div. 434, 84 N. Y. Supp. 444; *In re Howard,* 59 Vt. 594, 10 Atl. 716; *Rosenthal* v. *Board of Education,* 239 Ill. 29, 87 N. E. 878; *Ohio Coal Company* v. *Scott,* 241 Ill. 448, 89 N. E. 665; *Utah Association* v. *Home Fire Ins. Co.* (Utah), 102 Pac. 631; *Rankin* v. *Rankin,* 224 Pa. 514, 73 Atl. 920; Appeal and Error, vol. 3, Cent. Dig. 4614; *Field* v. *Winheim,* 123 Ill. App. 227; *Sutherlin* v. *Bloomer,* 50 Or. 398, 93 Pac. 135; *Fishburn* v. *Londershausen,* 50 Or. 363, 92 Pac. 1060, 14 L. R. A. (N. S.) 1224; *Salstrom* v. *Orleans Co.,* 153 Cal. 551, 96 Pac. 292;

*Northeastern Coal Co.* v. *Tyrrell,* 133 Ill. App. 472; *Bell* v. *Old,* 88 Ark. 99, 113 S. W. 1023; *Duffy* v. *Wilson,* 44 Colo. 340, 98 Pac. 826; *Boothe* v. *Farmers' National Bank,* 53 Or. 576, 98 Pac. 509; *Kossuth State Bank* v. *Richardson,* 141 Iowa, 738, 118 N. W. 906; *Griswold* v. *Szwanek,* 82 Neb. 761, 118 N. W. 1073, 21 L. R. A. (N. S.) 222; *Louisville R. Co.* v. *Holland,* 132 Ga. 173, 63 S. E. 898.)

Being of the opinion that the trial court erred, under his erroneous conception of the law, in failing and refusing to pass upon the motion for a new trial, in so far as the ground interposed by defendant of "insufficiency of the evidence to justify the verdict," because, according to his personal view entertained, he did not deem it his privilege or duty to consider this matter for the reason it had been passed upon by a jury, believing that justice demands that the lower court should pass upon this motion for a new trial, upon this point, as it should have done in the first instance, it is hereby ordered that the order of the district court denying the motion for a new trial be, and the same is hereby, set aside, with instructions to the court below to consider and pass upon the ground for a new trial interposed by defendant, "of the insufficiency of the evidence to justify the verdict," for which purpose the case is herewith remanded.

It is so ordered.